UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SERGIO G. TREVINO,                    )          NO. EDCV 07-931 AGR
                                      )
            Plaintiff,                )
                                      )
      v.                              )
                                      )          MEMORANDUM OPINION AND
MICHAEL J. ASTRUE,                    )          ORDER
Commissioner of Social Security,      )
                                      )
            Defendant.                )
_____)

       Sergio G. Trevino filed this action on August 9, 2007.  Pursuant to 28

U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge

Rosenberg on August 24 and 27, 2007.  On April 7, 2008, the parties filed a Joint

Stipulation ("JS") that addressed the disputed issues.  The Court has taken the

matter under submission without oral argument.

       Having reviewed the entire file, the Court remands for an award of benefits.

///

///

///

///

///

**I.**

## PROCEDURAL BACKGROUND

On June 4, 2003, Trevino filed an application for supplemental security income benefits.  A.R. 73-75.  The application was denied initially and upon reconsideration.  A.R. 21-23.  Trevino requested a hearing by an Administrative Law Judge ("ALJ").  A.R. 34.  The ALJ conducted a hearing on May 9, 2005, at which Trevino, a medical expert, and a vocational expert testified.  A.R. 13.  On September 8, 2005, the ALJ issued a decision denying benefits.  A.R. 10-20.  On September 19, 2005, Trevino requested review.  A.R. 8.  On May 24, 2007, the Appeals Council denied Trevino's request for review.  A.R. 5-7.

This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

///

///

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**DISCUSSION**

**A.    Disability**

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

**B.    The ALJ's Findings**

The ALJ found that Trevino had the following severe impairments:  bipolar disorder, personality disorder, and a history of drug and alcohol addiction in sustained full remission.  A.R. 17, 19.  Trevino had the residual functional capacity "to perform simple, repetitive tasks, with adequate pace and persistence, with no work with the public."  A.R. 19.  He had no exertional limitations.  *Id.* Trevino had no past relevant work.  *Id.*  Based on his residual functional capacity, the ALJ found that Trevino could work in various jobs, including hand packer, light; and assembler.  A.R. 20.

**C.    The ALJ's Duty to Develop the Record**

It is the claimant's duty to prove he is disabled.  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  *See* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks

3

1   omitted).  "An ALJ's duty to develop the record further is triggered only when

2   there is ambiguous evidence or when the record is inadequate to allow for proper

3   evaluation of the evidence."  *Mayes*, 276 F.3d  at 459-60.  The ALJ may satisfy

4   this duty by "subpoenaing the claimant's physicians, submitting questions to the

5   claimant's physicians, continuing the hearing, or keeping the record open after

6   the hearing to allow supplementation of the record."  *Tonapetyan*, 242 F.3d at

7   1150.

8        The ALJ found that Trevino applied for and was awarded disability benefits

9   pursuant to an application filed on or about May 11, 1981.  A.R. 13.  Trevino

10  argues that the ALJ should have "indicate[d] the basis of the prior disability

11  determination."  JS 3.

12       However, Trevino does not show an ambiguity or an inadequate record.

13  The medical records from the early 1980's are sufficient.  In 1983, Trevino was

14  sent to Worcester State Hospital for a court-ordered evaluation.  A.R. 212.

15  Trevino's discharge summary indicates a diagnosis of "Schizophrenia, Paranoid,

16  Chronic" and "Borderline Personality Disorder With Narcissistic Features."  A.R.

17  224.  The medical records for the period 1980-1983 indicate that Trevino

18  exhibited "confusion, impaired judgment, preoccupation with fantasies."  A.R.

19  212-213.  His thinking was "grandiose, delusional and autistic."  A.R. 209; *see*

20  *also* A.R. 235 (at discharge, he still had "fixed grandiose delusions").  His mental

21  status examination showed "signs of formal thought disorder," inability to make

22  "reasonable life decisions," impaired memory, short attention span, and tangential

23  thought process.  A.R. 216.  A subsequent evaluation at Bridgewater State

24  Hospital produced a diagnosis of "Bipolar disorder, residual type."  A.R. 243.

25  During a mental status examination, Trevino "gave the impression of being

26  anxious and extremely manic and narcissistic.  His grandiosity at times appeared

27  to be part of a delusional system."  A.R. 242 (making remarks such as being

28  president of a corporation).

4

1    The record shows that Trevino's benefits were terminated because Trevino

2    was "either incarcerated or had a[n] outstanding warrant for 03/00 thru 6/02."

3    A.R. 43.  Suspension of benefits during incarceration is mandatory pursuant to 42

4    U.S.C. § 402(x).  *Butler v. Apfel*, 144 F.3d 622, 627 (9th Cir. 1998).  After 12

5    months of continuous suspension, benefits are terminated and are not

6    automatically reinstated upon release from prison.  *See Stubbs-Danielson v.*

7    *Astrue*, No. 0735096, 2008 U.S. App. LEXIS 18019, *7 (9th Cir. August 22,

8    2008); 20 C.F.R. § 416.1335.  The ALJ stated that, according to medical records,

9    Trevino was last released from prison on May 29, 2003.  A.R. 15.

10   ### D.    Opinion of Psychiatrist Dr. Robert Shetler

11   There are three types of physicians:  (1) treating physicians (who examine

12   and treat), (2) examining physicians (who examine but do not treat), and (3)

13   nonexamining physicians (who neither examine nor treat).  *Lester v.  Chater*, 81

14   F.3d 821, 830 (9th Cir. 1995).  "[M]ore weight should be given to the opinion of a

15   treating source."  *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

16   When a treating physician's opinion is contradicted by another doctor, "the ALJ

17   may not reject this opinion without providing specific and legitimate reasons

18   supported by substantial evidence in the record.  This can be done by setting out

19   a detailed and thorough summary of the facts and conflicting clinical evidence,

20   stating his interpretation thereof, and making findings."  *Id.* at 632 (citations and

21   internal quotation marks omitted).

22   "The opinion of an examining physician is, in turn, entitled to greater weight

23   than the opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830 (citations

24   omitted).  An ALJ may rejected an uncontradicted examining physician's medical

25   opinion based on "clear and convincing reasons."  *Carmickle v. Comm'r, Soc.*

26   *Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-

27   31)).  When an examining physician's opinion is contradicted, "it may be rejected

28

5

1  for 'specific and legitimate reasons that are supported by substantial evidence in

2  the record.'" *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830-31)).

3      A "nonexamining doctor's opinion 'with nothing more' [does] not constitute

4  substantial evidence." *Id.* at 831 (citation omitted).  Nor can the opinion of a

5  nonexamining physician by itself "justif[y] the rejection of the opinion of either an

6  examining physician *or* a treating physician." *Id.* (citations omitted, emphasis in

7  original).  A nonexamining physician's opinion "may serve as substantial evidence

8  when . . . supported by other evidence in the record and . . . consistent with it."

9  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

10     Dr. Shetler, a staff psychiatrist, saw Trevino on July 3, 2001, at the request

11 of the Victorville Parole Office.[1]  A.R. 245.  Trevino was referred to Dr. Shetler

12 because Trevino was "on psychotropic medications with suicidal and assaultive

13 behavior."  *Id.*  Shetler noted that Trevino had been hospitalized 4-5 times before

14 because of "delusions of grandiosity, sociopath delusions and numerous

15 narcissistic personality disorders."  A.R. 246.  Trevino told Shetler that he had a

16 degree in screenwriting and had written six books which were copyrighted.  *Id.*

17     Shetler's partial diagnosis was "Personality Disorder, NOS (mostly the

18 Cluster B Type[2] with borderline, antisocial, narcissistic and hysterical qualities.

---

[1]  Trevino argues that Shetler is a treating physician.  Shetler saw Trevino once and therefore had only a minimal treating relationship with Trevino.  *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you.").  Whether Shetler is a treating or examining physician does not affect the outcome of this case.

[2]  "The Personality disorders are grouped into three clusters. * * * Cluster B includes the Antisocial, Borderline, Histrionic, and Narcissistic Personality Disorders."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") at 685 (4th ed. 2000).

He also shows personality disorder cyclothymia and paranoia.[)]."[3]  *Id.*  Dr. Shetler concluded that Trevino is "such a profoundly disabled personality disorder patient that he definitely is disabled.  It is doubtful that therapy and psychotropic medications will be of significant value."  A.R. 247.  Shetler gave Trevino a GAF (Global Assessment of Functioning) score of 50.[4]  A.R. 246.

The ALJ did not mention Dr. Shetler's diagnosis and misstated his assessment and prognosis.  Whereas the ALJ stated Trevino was on Wellbutrin "which apparently controlled his symptoms," Dr. Shetler made no such finding.  *Compare* A.R. 14 *with* A.R. 245.  With respect to Wellbutrin, Dr. Shetler wrote that "[i]t is not well determined how valuable this will be in treating him" and expressed doubt that therapy and psychotropic medications will be of significant value.  A.R. 247.

The ALJ found Shetler's opinion to be "not fully credible" for two reasons.  First, an opinion of disability is reserved to the Commissioner.  Second, Dr. Shetler's conclusion of disability is "not supported by the weight of the current medical record."  A.R. 18.

The ALJ's statement that determination of disability is reserved to the Commissioner does not justify discounting the *medical* opinion of a treating or examining physician.  *See Boardman v. Astrue*, 2008 U.S. App. LEXIS 15522, *3-*4 (9th Cir. July 21, 2008).  Medical opinions "'reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and

_____

[3]  During the Mental Status Examination, Shetler found that Trevino was "alert, coherent and argumentative," "evasive, defensive, circuitous and circumstantial," "overly active and overly energetic."  A.R. 246.  Trevino had "paranoid ideation," but "no hallucinations."  *Id.*  Trevino's judgment was "impaired," his insight "limited," and thinking was "abstract, but personalized."  *Id.*

[4]  A GAF score of 50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., no friends unable to keep a job)."  DSM-IV-TR at 34.

1  [a claimant's] physical or mental restrictions.'" 20 C.F.R. § 404.1527(a)(2).  The

2  fact that Dr. Shetler also expressed an opinion as to disability does not constitute

3  a "legitimate" reason to reject Dr. Shetler's medical opinion as to diagnosis,

4  prognosis, symptoms, and severity of impairment.

5        To the extent that the ALJ found that Dr. Shetler's medical opinion was not

6  supported by the weight of the current medical record, the ALJ's finding was not

7  supported by substantial evidence.  The ALJ relied on one consultative

8  psychiatric report and nonexamining physicians – the medical expert and State

9  Agency reports.  A.R. 17.

10       The sole examining physician relied on by the ALJ, Dr. Fontana, saw

11  Trevino on September 18, 2003.  A.R. 300.  Trevino told Fontana that he was

12  charged with a felony for "holding his fiancee just like the cartoon character Pepe

13  LePew."  A.R. 301.  Trevino said that he invented a military weapons system

14  while in prison, but the person at the military base who conferred with him died.

15  *Id.*  Trevino said he had planned to jump off a building in 2000 "but was unable to

16  approach the ledge because of strong winds."  *Id.*  Trevino claimed to be going to

17  school full-time at Victor Valley College.  A.R. 302.  Trevino's statements are

18  consistent with Dr. Shetler's diagnosis and prognosis.[5]

19       Dr. Fontana's opinion is internally inconsistent and does not constitute

20  substantial evidence.  Dr. Fontana stated that his source of information is

21  Trevino, but "[i]t is very difficult to get a history from this claimant" and "[h]ospital

22  records, as well as psychological testing, would be helpful."[6]  A.R. 303; *see* A.R.

23

24       [5]  Medical records from 2004 report Trevino telling the psychiatrist that he
     speaks four languages and wants to be a translator.  A.R. 360.  The records also
25   report paranoid thinking, hyperverbal, pressured, rambling.  A.R. 360-361.  Later,
     Trevino was seen in an ER for expressing thoughts of suicide and wanting to hurt
26   others after being fired from a temporary job.  A.R. 367-368.

27       [6]  The only records Fontana reviewed were "handwritten notes from the
     Office of the Sheriff, Worcester County" and progress notes of John Kehoe, a
28   licensed clinical social worker.  A.R. 300.

300. Fontana deferred a diagnosis on Axis II. A.R. 303. On Axis I, Fontana said to "Rule out Cyclothymic Disorder" (A.R. 303), which Dr. Shetler diagnosed. *Compare* A.R. 303 *with* A.R. 246.

Moreover, Dr. Fontana's conclusion that "[t]here is no evidence of . . . delusions," is not consistent with his report of Trevino's statements. The ALJ noted that Trevino did not produce any Victor Valley College records or proof of completing a screenwriting training program as he testified at the hearing. A.R. 17, 392. Dr. Fontana does not state any basis – and the Court has found none – for his statements that Trevino "should be" able to "perform simple and repetitive tasks, as well as more detailed and complex tasks. He should be able to accept instructions from supervisors, and interact appropriately with coworkers and the public. He should be able to perform work activities on a consistent basis, without additional supervision. He should be able to maintain regular attendance in the workplace, and complete a normal workday/workweek." A.R. 303. Dr. Fontana assessed a GAF score of 60 which, according to the DSM-IV-TR, indicates "conflicts with peers or co-workers." A.R. 303. Dr. Fontana noted that Trevino's longest lasting job was four months. A.R. 302. Given the limited examination, the admitted lack of medical records, the internal inconsistencies, and the inability to rule out Dr. Shetler's diagnosis, Dr. Fontana's report does not constitute substantial evidence.

The nonexamining physicians also do not constitute substantial evidence to discount Dr. Shetler's medical opinion. The ALJ relied on a State Agency nonexamining physician, Michael Skopec. Dr. Skopec completed a Psychiatric Review Technique form on October 7, 2003.[7] A.R. 15, 305. Dr. Skopec concluded that Trevino had *no* limitations in maintaining social functioning, maintaining concentration, persistence, or pace, or episodes of decompensation.

---

[7] There is no report from Skopec or indications as to what formed the basis of his conclusions.

1    A.R. 315.  Dr. Skopec did not state any basis for his opinion.  Check-the-box

2    forms, with no analysis, are entitled to little weight.  *See Murray v. Heckler*, 722

3    F.2d 499, 501 (9th Cir. 1983); *see also Tidwell v. Apfel*, 161 F.3d 599, 602 (9th

4    Cir. 1999) (an ALJ properly rejects a conclusory, check-the-box form as

5    "inadequate"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (same).  A

6    nonexamining physician's opinion may serve as substantial evidence only when

7    supported by other evidence in the record and consistent with it.  *Andrews*, 53

8    F.3d at 1041.

9        Another State Agency nonexamining psychiatrist, Henry Amado, completed

10   a Psychiatric Review Technique form (A.R. 320-333) and a Mental Residual

11   Functional Capacity Assessment (A.R. 334-337) on February 10, 2004.  Dr.

12   Amado did not agree with Dr. Skopec.  A.R. 336.  Dr. Amado concluded that

13   Trevino was moderately limited in social functioning and maintaining

14   concentration, persistence, or pace.  A.R. 330.  In the category of Sustained

15   Concentration and Persistence, Dr. Amado found that Trevino was moderately

16   limited in his ability to carry out detailed instructions, his ability to maintain

17   attention and concentration for extended periods, and his "ability to complete a

18   normal workday and workweek without interruptions from psychologically based

19   symptoms and to perform at a consistent pace without an unreasonable number

20   and length of rest periods."  A.R. 334-335.  In the category of Social Interaction,

21   Amado found that Trevino was moderately limited in his ability to interact

22   appropriately with the general public."  A.R. 335.  On the final page, there is a

23   stamp that says:  "Can sustain simple repetitive tasks with adequate pace and

24   persistence.  Can adapt and relate to coworkers and supvs cannot work with the

25   public."  A.R. 336.  This stamp appears internally inconsistent with Dr. Amado's

26   finding that Trevino was moderately limited in his "ability to complete a normal

27   workday and workweek without interruptions from psychologically based

28   symptoms and to perform at a consistent pace without an unreasonable number

10

1    and length of rest periods." A.R. 335.  No explanation is given.  Such

2    inconsistent findings do not constitute substantial evidence.  *See Morgan v.*

3    *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("internal

4    inconsistencies . . . also constitute relevant evidence" for an ALJ to consider in

5    discounting the opinion); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.

6    1986) (the ALJ properly rejected internally inconsistent medical reports from the

7    same doctor).

8          Apparently in reliance on Amado's conclusions, the ALJ's RFC stated that

9    Trevino could "perform simple, repetitive tasks, with adequate pace and

10   persistence, with no work with the public." A.R. 19.  However, the ALJ failed to

11   include a moderate limitation on Trevino's ability to complete a normal workday

12   and workweek without interruptions from psychologically based symptoms.  *Id.*

13         The ALJ purportedly relied on the testimony of the medical expert, Dr.

14   Soltz, but  mischaracterized that testimony.  A.R. 16.  The ALJ acknowledged Dr.

15   Soltz's testimony that Trevino's best diagnosis is a bipolar condition.  A.R. 16,

16   406.  The ALJ also acknowledged Dr. Soltz's testimony that Trevino's "history of

17   problems with control and inhibition of his impulses and delusional behavior is

18   present for nearly twenty years." A.R. 16, 406.

19         Dr. Soltz testified that Trevino is thought to have a personality disorder

20   under 12.08.  A.R. 406.  Soltz added "that's always difficult because everybody in

21   prison *is thought to have* an antisocial personality." *Id.* (emphasis added).

22   However, Dr. Soltz went on to say that Trevino "does have characteristics that

23   have been noted in the records suggestive of a personality disorder, which is an

24   inflexible way of dealing with the world, and not a particularly positive thing for

25   capability of working.  As well, to validate his problem in maintaining employment

26   with the condition that he has, the longest job he's ever had was in '87 for four

27   months." A.R. 406.  The ALJ, however, discounts this testimony by stating that

28   "almost everyone in prison has a personality disorder." A.R. 16.  That is not,

11

1   however, what Dr. Soltz said.  He said only that people in prison are thought to

2   have antisocial personality.  A.R. 406.  Dr. Soltz went on to describe Trevino's

3   personality disorder, which is a medical term.[8]  Moreover, the ALJ discounted Dr.

4   Soltz's testimony about Trevino's employment history by telling Dr. Soltz that

5   "Trevino had one year that he earned $9,000 and that's it.  The rest was zilch.

6   He's in custody or he's out doing other things."  A.R. 407.

7       Dr. Soltz found marked impairment in maintaining social functioning.  A.R.

8   408.  The ALJ then told Dr. Soltz that he is assuming that Trevino dropped out of

9   college only because he failed a couple of classes (an assumption for which the

10  ALJ provided no support in the record).  The ALJ asked Dr. Soltz to assume that

11  Trevino is able to have contact with the public and attend college for a period of

12  time.  A.R. 409.  On the basis of those assumptions, Dr. Soltz said Trevino would

13  have mild limitations.  *Id.*

14      Opinions of a nonexamining, testifying medical expert "need not be

15  discounted and may serve as substantial evidence when they are supported by

16  other evidence in the record and are consistent with it."  *Andrews*, 53 F.3d at

17  1041.  Here, the medical expert's testimony was consistent with other medical

18  records, yet the ALJ required the medical expert to opine differently based on the

19  ALJ's own assumptions.  Thus, the ALJ improperly discounted the medical

20  expert's testimony but failed to support his underlying findings with substantial

21  evidence in the record.  Accordingly, the ALJ has failed to support his findings

22  with substantial evidence, and he has failed to give "specific and legitimate

23  reasons that are supported by substantial evidence in the record" for rejecting Dr.

24  Shetler's opinion.  *Carmickle*, 533 F.3d at 1164.

25

26  _____

27      [8] "A Personality  Disorder is an enduring pattern of inner experience and
    behavior that deviates markedly from the expectations of the individual's culture,
    is pervasive and inflexible, has an onset in adolescence or early adulthood, is
28  stable over time, and leads to distress or impairment."  DSM-IV-TR at 685.

1    Because the ALJ failed to set forth specific and legitimate reasons, Dr.

2    Shetler's opinion must be credited.  *See Widmark v. Barnhart*, 454 F.3d 1063,

3    1069 (9th Cir. 2006).

4    ### E.    Maureen McNulty's Opinion

5    On March 26, 2002, Maureen McNulty, a Licensed Mental Health

6    Counselor, completed a six-page "Jail/House of Corrections Intake Form."  A.R.

7    273-278.  McNulty diagnosed Trevino with "Bi Polar (rule out)."  A.R. 278.  She

8    noted pressured speech, manic mood/affect, and grandiose thought content of

9    delusional proportions.  A.R. 277.  She also noted that Trevino's concentration

10   and judgment were "poor."  A.R. 278.  She assessed Trevino with a GAF score of

11   40.[9]  *Id.*

12   Because the Court is remanding for an award of benefits on another

13   ground, the Court does not address Trevino's argument that the ALJ ignored

14   McNulty's report.

15   ### F.    Remedy

16   Because Trevino's entitlement to benefits is clear and no useful purpose

17   would be served by further administrative proceedings, the ALJ's decision should

18   be reversed and the matter remanded for an award of benefits.  *Benecke v.*

19   *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2006).

20   ///

21   ///

22   ///

23   ///

24   ///

25

26       [9]  A GAF score of 40 indicates:  "Some impairment in reality testing or
27   communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major
     impairment in several areas, such as work or school, family  relations, judgment,
28   thinking, or mood (e.g., depressed man avoids friends, neglects family, and is
     unable to work . . .)."  DSM-IV-TR at 34.

1

**IV.**

2

**ORDER**

3          IT IS HEREBY ORDERED that the matter is remanded for an award of

4    benefits.

5          IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

6    Order and the Judgment herein on all parties or their counsel.

7

8    DATED:  August 26, 2008          _____

9                                                    ALICIA G. ROSENBERG
                                                     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14